1  TOWNSEND AND TOWNSEND AND CREW LLP
   MARC M. GORELNIK (State Bar No. 166833)
2  JUDITH M. SCHVIMMER (State Bar No. 230285)
   Two Embarcadero Center, 8th Floor
3  San Francisco, California  94111
   Telephone: 415.576.0200
4  Facsimile: 415.576.0300
   Email:  mmgorelnik@townsend.com
5          jmschvimmer@townsend.com

6  LOEB & LOEB LLP
   BARRY I. SLOTNICK
7  BRYAN I. REYHANI
   345 Park Avenue
8  New York, NY  10154-0037
   Telephone:  212.407.4000
9
   Attorneys for Plaintiff
10 Steerpike Productions, Inc.

11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14

15 STEERPIKE PRODUCTIONS, INC.,          Case No.    C-07-02989 RMW

16              Plaintiff,

17        v.                             ***EX PARTE* MOTION FOR TEMPORARY
                                         RESTRAINING ORDER, ORDER OF
18 JOHN DOES 1-100, JANE DOES 1-100,     SEIZURE, AND ORDER TO SHOW
   and XYZ COMPANIES 1-100,              CAUSE RE:  PRELIMINARY
19                                       INJUNCTION AND MEMORANDUM OF
              Defendants.                POINTS AND AUTHORITIES IN
20                                       SUPPORT THEREOF**

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

InsertTOCHere

EX PARTE MOTION ............................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 3

I.     INTRODUCTION ......................................................................................................... 3

II.    STATEMENT OF ISSUES TO BE DECIDED ....................................................... 4

III.   STATEMENT OF RELEVANT FACTS .................................................................. 4

IV.   ARGUMENT ................................................................................................................ 4

     A.    The Sale of "Bootleg" Merchandise Violates Plaintiff's Exclusive
          Rights............................................................................................................... 4

          1.    Defendants Are Violating Section 43(a) of The Lanham Act ................ 4

          2.    Defendants Are Violating the Right of Publicity .................................... 6

          3.    Defendants Are Engaging in Unfair Competition ................................. 7

     B.    Plaintiff is Entitled to a Temporary Restraining Order, an Order of
          Seizure, and a Preliminary Injunction ........................................................ 8

          1.    An Injunction and Order of Seizure Are Appropriate ........................... 8

          2.    A Temporary Restraining Order, Without Notice, is Available
               to Enjoin Activities of Persons Whose Identities Are Unknown ............ 9

          3.    Plaintiff is Entitled to a Nationwide Preliminary Injunction ............... 11

     C.    This Court's Powers to Enforce its Injunctions Throughout the United
          States is Binding on Those Parties in Active Concert or Participation
          with the Enjoined Parties............................................................................. 14

V.    BOND.......................................................................................................................... 15

VI.   CONCLUSION .......................................................................................................... 16

*EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER OF SEIZURE, AND
ORDER TO SHOW CAUSE RE:  PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
Case No. C-07-02989 RMW

i

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*AMF, Inc. v. Sleekcraft Boats,*
  599 F.2d 341 (9th Cir. 1979) ............................................................................................... 6

5

*Billy Joel v. Various John Does,*
  499 F. Supp. 791 (E.D. Wisc. 1980) .................................................................................... 5

6

*Boston Prof'l Hockey Ass'n v. Del's Cap and Emblem Mfg.,*
  510 F.2d 1004 (5th Cir. 1974) ............................................................................................. 7

7

8

*Carson v. Here's Johnny Portable Toilets, Inc.,*
  698 F.2d 831 (6th Cir. 1983) ............................................................................................... 7

9

*Ciba-Geigy Corp. v. Bolar Pharm. Co.,*
  747 F.2d 844 (3rd Cir. 1984) ......................................................................................... 12, 13

10

11

*Day Cos. v. Patat,*
  440 F.2d 1343 (5th Cir. 1971) ........................................................................................... 14

12

*Dozne v. Saettele,*
  112 F.2d 155 (8th Cir. 1940) ............................................................................................. 15

13

14

*Eastwood v. Superior Court,*
  149 Cal. App. 3d 409 (1983) ........................................................................................... 6, 7

15

*Fuentes v. Shevin,*
  407 U.S. 67 (1972) ............................................................................................................. 9

16

17

*Homeowners Group Inc. v. Home Mktg. Specialists Inc.,*
  931 F.2d 1100 (6th Cir. 1991) ........................................................................................... 7

18

In *Fleming v. Gray Mfg. Co.,*
  352 F. Supp. 724 (D. Conn. 1973) .................................................................................... 13

19

20

*In re Vuitton et Fils S.A.,*
  606 F.2d 1 (2d Cir. 1979) .............................................................................................. 9, 10

21

In *Reich v. United States,*
  239 F.2d 134 (1st Cir. 1956) ............................................................................................. 14

22

23

*Int'l News Service v. Associated Press,* 248 U.S. 215, 239 (1918).................................... 5, 7

24

*Kesler v. Eldred*
  206 U.S. 285 (1907) ......................................................................................................... 12

25

*Leman v. Krentler-Arnold Hinge Last Co.,*
  284 U.S. 448 (1932) ..................................................................................................... 12, 13

26

27

*Marion Labs., Inc. v. Michigan Pharmacal Corp.,*
  338 F. Supp. 762 (E.D. Mich. 1972), *aff'd,* 473 F.2d 910 (6th Cir. 1973) ........................ 7

28

*EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER OF SEIZURE, AND
ORDER TO SHOW CAUSE RE:  PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
Case No. C-07-02989 RMW

ii

**TABLE OF AUTHORITIES (con't)**

Page

*Moon Records v. Various John Does,*
    217 U.S.P.Q. 46 (N.D. Ill. 1981) ................................................................. 8, 10

*NutriSystem Inc. v. Conn-Stann Indus., Inc.,*
    809 F.2d 601 (9th Cir. 1987) ......................................................................... 5, 6

*Pacific Reinsurance Mgmt. Corp.,*
    929 F.2d 1215 (7th Cir. 1991) ......................................................................... 13

*R.H. Donnelley Corp. v. Illinois Bell Telephone Co.,*
    595 F. Supp. 1202 (N.D. Ill. 1984) ................................................................... 5

*Regal Knitwear Co. v. NLRB,*
    324 U.S. 9 (1945) ............................................................................................ 14

*Rockwell Graphics Sys., Inc. v. DEV Indus., Inc.,*
    91 F.3d 914 (7th Cir. 1996) ............................................................................ 14

*Rubber Tire Co. v. Goodyear Tire & Rubber Co.,*
    232 U.S. 413 (1914) ........................................................................................ 12

*Stiller v. Hordman,*
    324 F.2d 626 (2nd Cir. 1963) ......................................................................... 13

*Two Pesos, Inc. v. Taco Cabana,*
    505 U.S. 763 (1992) .......................................................................................... 5

*Winterland Concessions Co. v. Creative Screen Design Ltd.,*
    214 U.S.P.Q. 188 (N.D. Ill. 1981) .................................................................... 4

**Statutes**

15 U.S.C. § 1116 ................................................................................. passim

15 U.S.C. § 1118 ....................................................................................... 1, 8

15 U.S.C. § 1125(a) .............................................................................. 1, 4, 5

15 U.S.C. § 1126 ....................................................................................... 1, 8

California Civil Code § 3344(a) ............................................................. 7

**Other Authorities**

11 Wright & Miller, *Federal Practice and Procedure,*
    § 2945 at 402 ............................................................................................ 12, 14

J. T. McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 30:36 .................................. 1, 8

Lahnam Act § 43(a) ................................................................................. 1, 8

**TABLE OF AUTHORITIES (con't)**

Page

McKenney and Long, *Federal Unfair Competition:*
    *The Lanham Act*, § 2:04 (1989) ........................................................................... 5

**Rules**

Federal Rules of  Civil Procedure 64 ................................................. 1

Federal Rules of Civil Procedure 4 ..................................................... 11

Federal Rules of Civil Procedure 65 ..................................................... 1, 15

L.R. 65-1 .......................................................................................... 1

*EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER OF SEIZURE, AND
ORDER TO SHOW CAUSE RE:  PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
Case No. C-07-02989 RMW

iv

# EX PARTE MOTION

Plaintiff Steerpike Productions, Inc. ("Plaintiff" and "SPI"), pursuant to Fed. R. Civ. P. 64 and 65 and L.R. 65-1, as well as 15 U.S.C. §§ 1116, 1118, and 1125(a), hereby moves the Court *ex parte* for an Order granting a Temporary Restraining Order, an Order of Seizure, and an Order To Show Cause Re: Preliminary Injunction directed to bootlegger Defendants John Does 1-100, Jane Does 1-100, and XYZ Companies 1-100 ("Defendants") from: (i) violating Plaintiff's exclusive right to sell and license the sale of merchandise bearing the trademarks of the group THE POLICE (the "Artist") during the Artist's current tour (the "Tour"); (ii) infringing the Artist's trademarks and engaging in unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iii) making knowing use of the Artist's name and/or likeness without consent in violation of California Civil Code Section 3344(a); and (iv) violating the Artists' Right of Privacy.

Plaintiff further moves the Court for an Order of Seizure to allow Plaintiff and its agents to seize all the bootleg merchandise manufactured, sold and/or distributed for sale by Defendants. Such seizure is permitted under Section 44 of the Lanham Act (15 U.S.C. § 1116), which specifically provides for injunctions "upon such terms as the court may deem reasonable" to prevent the infringement of registered trademarks <u>and</u> violations of Section 43(a). 15 U.S.C. § 1116(a). *See also* 15 U.S.C. § 1118 (a court has the authority to order delivery, seizure and destruction of merchandise which violates registered trademark or Section 43(a) of the Lanham Act); 15 U.S.C. § 1126 (remedies for violation of registered trademarks also available for acts of unfair competition). *See also* J. T. McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 30:36 ("[A] federal court has power to issue an *ex parte* seizure order in an appropriate case involving infringement of an unregistered mark under Lahnam Act § 43(a).")

As set forth in Plaintiff's Complaint, as well as in its attached Memorandum of Points and Authorities in Support of Plaintiff's Motion For Temporary Restraining Order, Order of Seizure, and Order To Show Cause For A Preliminary Injunction and the supporting declarations of Barry I. Slotnick and Peter A. Merluzzi, Plaintiff is likely to prevail on the merits of its claims and immediate and irreparable injury will result to Plaintiff unless this Motion is granted. Plaintiff therefore seeks a Temporary Restraining Order and Order To Show Cause Re: Preliminary Injunction restraining

*EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER OF SEIZURE, AND
ORDER TO SHOW CAUSE RE:  PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
Case No. C-07-02989 RMW

1

1    Defendants from violating Plaintiff's exclusive contractual rights and using and infringing the Artist's

2    trademarks, and granting Plaintiff the right to seize all subject merchandise.

3         WHEREFORE, Plaintiff respectfully requests that the Court enter a temporary restraining

4    order and an order to show cause for a preliminary injunction:

5         A.    Enjoining Defendants, their agents, servants, employees, attorneys, and other persons

6    in active concert or participation with them from the unauthorized manufacture, distribution, sale or

7    holding for sale of clothing, jewelry, photographs, posters and other merchandise bearing the name,

8    logo, likeness or trademark of the Artist, the well known rock group known as THE POLICE.

9         B.    Granting Plaintiff, its counsel, representatives, and persons acting under their

10   supervision, as well as the United States Marshal for the Northern District of California, state and

11   local police, and local deputy sheriffs, the authorization to seize and impound any and all infringing

12   merchandise bearing the Artist's trademark which defendants, or those acting in concert with them,

13   attempt to sell or are holding for sale in connection with the Artist's concert performance in Oakland,

14   California, on June 13, 2007, including any carton, container, or other means of carriage in which the

15   infringing merchandise is found.

16        C.    Requiring Defendants, their agents, servants, employees, attorneys, and other persons

17   in active concert or participation with them to turn over any and all infringing merchandise bearing the

18   Artist's trademark which defendants, or those acting in concert with them, attempt to sell or are

19   holding for sale in connection with the Artist's concert performance in Oakland, California, on

20   June 13, 2007, including any carton, container, or other means of carriage in which the infringing

21   merchandise is found, upon demand by Plaintiff, its counsel, representatives, and persons acting under

22   their supervision, as well as the United States Marshal for the Northern District of California, state and

23   local police, and local deputy sheriffs.

24        A proposed Order granting Plaintiff's Motion is submitted herewith.

25

26

27

28

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3        Plaintiff's papers establish that Defendant bootleggers, and those acting in concert with them,

4    will sell, or attempt to sell, bootleg T-shirts and other bootleg merchandise at concerts of the rock

5    group THE POLICE (the "Artist") during the Artist's current tour (the "Tour").  Indeed, Defendant

6    bootleggers commenced their sales of bootleg goods in Seattle, Washington on June 6, 2007.   The

7    papers further establish that Defendants are present, or almost certainly will be present, in this district

8    to sell, or attempt to sell, infringing merchandise in connection with the Artist's concert at the McAfee

9    Coliseum in Oakland, California on June 13, 2007.  The bootleg merchandise will bear the Artist's

10   name, images, and logos, without legal authority.  Indeed, Plaintiff has the <u>exclusive</u> right to sell and

11   license the sale of merchandise bearing the Artist's trademark in connection with concerts on the Tour.

12       Plaintiff is entitled to a temporary restraining order, to an order permitting seizure of the

13   bootleg merchandise, and ultimately to a preliminary injunction prohibiting these illegal acts.  By

14   using the Artist's names, images and logos without authorization, Defendants and their cohorts are

15   violating Section 43(a) of the Lanham Act (unregistered marks and unfair competition) and common

16   law prohibitions against unfair competition and violations of the right of publicity.

17       Defendants can assert no defense to Plaintiff's claims.  Moreover, not only is each bootleg sale

18   irretrievably lost to Plaintiff, but the damage to Plaintiff's and the Artist's good will through the

19   distribution of inferior merchandise cannot be calculated or remedied.  The only way that these

20   bootleggers can be stopped is through issuance of a temporary restraining order and order of seizure

21   followed by a preliminary injunction.

22       The public interest would be served by issuance of the relief requested, since the public interest

23   generally favors the protection of legitimate property and contractual rights.  In addition, the relief

24   requested is the <u>only</u> method of protecting the public from inferior merchandise, including the

25   infringing merchandise, which bears a false designation of origin.  Such merchandise is created and

26   sold by individuals accountable to no one, whether for payment of royalties, income or sales taxes, or

27   for quality control.  There is no potential harm to any legitimate interest of defendants or any other

28   persons if the requested relief is granted.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Do the sales of unauthorized merchandise bearing THE POLICE's name, likenesses and trademarks violate Plaintiff's exclusive rights?

2.    Is Plaintiff entitled to a preliminary injunction and order of seizure, with temporary restraining order, against Defendants and those acting in concert with Defendants?

## III.    STATEMENT OF RELEVANT FACTS

Plaintiff possesses the exclusive rights to use the Artist's name, likenesses, and trademarks on merchandise sold at or in connection with the Artist's concerts on its current Tour.

The current Tour of the Artist commenced on June 6, 2007, in Seattle, wWashington and will include a performance at the McAfee Coliseum in Oakland on June 13, 2007.  Based upon the immense popularity of the Artist, and upon the prior experience of the Plaintiff, the area surrounding the Oakland concert venue, and all subsequent concert venues, will be an impromptu vending site for professional bootleggers offering illegal merchandise for sale bearing the Artist's trademarks.  Indeed, rampant bootlegging infected the recent concert site in Seattle, Washington, including by bootleggers previously active at Oakland, California concert venues. Declaration of Peter A. Merluzzi, ¶ 8. In order to protect its exclusive rights, Plaintiff seeks the injunctive relief described herein.

## IV.    ARGUMENT

### A.    The Sale of "Bootleg" Merchandise Violates Plaintiff's Exclusive Rights

Plaintiff has the exclusive right to sell and license the sale of merchandise bearing the Artist's name, image, and logos on the Artist's current tour.  The sale of counterfeit merchandise by Defendants violates these rights and must be enjoined.

#### 1.    Defendants Are Violating Section 43(a) of The Lanham Act

The courts have repeatedly held that the use of registered and unregistered names, images and logos of musical artists by bootleggers violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *See* temporary restraining orders and preliminary injunction orders attached to the accompanying Declaration of Barry I. Slotnick, Esq. and the cases listed in Appendix A attached hereto.  *See also Winterland Concessions Co. v. Creative Screen Design Ltd.*, 214 U.S.P.Q. 188 (N.D. Ill. 1981) (sales of bootleg T-shirts bearing the names of various rock artists violates *Billy Joel v. Various John Does*,

*EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER OF SEIZURE, AND ORDER TO SHOW CAUSE RE:   PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. C-07-02989 RMW

4

499 F. Supp. 791, 792 (E.D. Wisc. 1980) (sale of unauthorized T-shirts bearing the name of the artist

Billy Joel violates Section 43(a) of the Lanham Act).

Section 43(a) is designed to prevent a wide range of conduct involving both registered and

unregistered names, images, and logos.  Section 43(a) provides in pertinent part:

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which…is likely cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods, services or commercial activities by another person, . . . shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A)

This broad prohibition against "unfair competition" covers not only confusion as to source or

sponsorship between Defendants' goods and Plaintiff's goods, but it also prohibits the

misappropriation of the efforts of others.  McKenney and Long, *Federal Unfair Competition: The

Lanham Act*, § 2:04 (1989).  Section 43(a) codifies the principle enunciated by the Supreme Court in

*Int'l News Service v. Associated Press*, 248 U.S. 215, 239 (1918) that a party cannot "reap where it has

not sown."  *See also R.H. Donnelley Corp. v. Illinois Bell Telephone Co.*, 595 F. Supp. 1202, 1206

(N.D. Ill. 1984) ("[t]hose who invest time, money and energy into the development of a product and

its accompanying goodwill should be allowed to reap the advantages of their investment").

The elements of the claim for violation of Section 43(a) are: (1) that the mark is valid and

protectable; and (2) that the defendant's use of the mark is likely to cause confusion among the

consuming public.  *Two Pesos, Inc. v. Taco Cabana*, 505 U.S. 763, 769-70 (1992).

This test is clearly met here.  The Artist's names, images, and logos are strong protectable

marks.  Using the traditional scale of marks from the generic to the arbitrary, Plaintiff's marks are

arbitrary; they do not describe the goods to which they are attached.  Accordingly, Plaintiff's marks

are entitled to the highest protection.

The likelihood of confusion is measured by the standard enunciated in *NutriSystem Inc. v.

Conn-Stann Indus., Inc.*, 809 F.2d 601 (9th Cir. 1987).  Under this standard the Court should consider

the following factors in determining the likelihood of confusion:

1          (1)    the strength of the mark;

2          (2)    the similarity between the marks;

3          (3)    marketing channels and proximity of the products;

4          (4)    good faith; and

5          (5)    actual confusion.

6    *Id.* at 604.

7          Judged by these factors, there is no defense to Defendants' use of Plaintiff's marks.  The

8    Artist's name, image, and logo are very strong marks.  Defendant bootleggers will be copying these

9    trademarks and images on the infringing merchandise and selling such merchandise at the Artist's

10   concerts.  The same items — T-shirts and hats, together with other typical concert merchandise — will

11   be offered for sale by both the Plaintiff and the Defendant bootleggers in the same areas on the same

12   dates.  Concert goers will not "shop around," but will make purchases whenever convenient on their

13   arrival at and departure from the concerts.  Moreover, where, as here, Defendants are aware of the

14   Plaintiff's use of the mark, Defendants' intent is presumed to be in bad faith.  *See AMF, Inc. v.*

15   *Sleekcraft Boats*, 599 F.2d 341, 344 (9th Cir. 1979) (deception may be presumed from the knowing

16   adoption of a similar mark).  Intentional copying of the Artist's mark makes a likelihood of confusion

17   a certainty.

18         Defendants have manufactured bootleg merchandise for the sole purpose of selling it at the

19   concert venues.  It is beyond dispute that Defendants have utilized, and will continue to knowingly

20   utilize, the Artist's protected marks to deceive the public and create the appearance that Defendants'

21   illegal merchandise is sponsored by or originated with the Artist and Plaintiff.  This is precisely the

22   type of conduct Section 43(a) was designed to stop.

23                    **2.    Defendants Are Violating the Right of Publicity**

24         Plaintiff has the <u>exclusive</u> right to control the commercial value of the name and likeness of the

25   Artist on its current concert tour and to prevent others from exploiting that value without permission.

26   California's common law right of privacy safeguards Plaintiff's right to commercially exploit the name

27   and likeness of the artist and provides protection against the "appropriation for defendant's advantage,

28   of the plaintiff's name or likeness."  *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 416 (1983).

This common law right of privacy is supplemented by the statutory right of publicity of Section 3344 of the California Civil Code:

> Any person who knowingly uses another's name, voice, signature, photograph of likeness in any manner, on or in products, merchandise or goods, or for the purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services without such person's prior consent, shall be liable for any damages sustained by persons injured as a result thereof.

California Civil Code § 3344(a).

Violation of both the common law privacy right and the statutory publicity right are demonstrated if:  (1) defendant uses plaintiff's name or likeness; (2) the defendant's use of plaintiff's identity is for defendant's commercial advantage; and (3) plaintiff has not consented to their use.  *See Eastwood,* 149 Cal. App. 3d at 417.  Here, Plaintiff possesses the exclusive right to exploit the name, likenesses and logos of the Artist in connection with merchandise sold on the Tour.  Defendants' use of the name, likenesses and logos of the Artist is undertaken to sell a product — usually T-shirts or similar goods — for commercial advantage and without any permission from Plaintiff.  Accordingly, every sale by the Defendant bootleggers violates the California right of publicity.

The Plaintiff has a very strong likelihood of success on a right of publicity claim.  The recordings and personal appearances of the Artist enjoy the highest commercial success and popularity.  Moreover, the Artist and Plaintiff have embarked on a controlled program of merchandising.  The injunctive relief sought by Plaintiff is against the unauthorized appropriation of these rights and the unauthorized application of the Artist's name and likeness to novelty merchandise.

### 3.    Defendants Are Engaging in Unfair Competition

Common law prohibits unfair competition.  *See Int'l News Serv. v. Associated Press*, 248 U.S. 215 (1918) (a party cannot "reap where it has not sown"); *Homeowners Group Inc. v. Home Mktg. Specialists Inc.*, 931 F.2d 1100, 1104 (6th Cir. 1991); *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 833 (6th Cir. 1983).  Unfair competition is demonstrated where a defendant, without permission, uses the names or likenesses owned or licensed to a plaintiff.  *See Boston Prof'l Hockey Ass'n v. Del's Cap and Emblem Mfg.*, 510 F.2d 1004, 1010 (5th Cir. 1974) (use of another's name or trademark is unfair competition); *Marion Labs., Inc. v. Michigan Pharmacal Corp.*, 338 F. Supp. 762, 767 (E.D. Mich. 1972), *aff'd*, 473 F.2d 910 (6th Cir. 1973).  Therefore, common law unfair

*EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER OF SEIZURE, AND
ORDER TO SHOW CAUSE RE:   PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
Case No. C-07-02989 RMW

7

1    competition is manifest in the instant case.

2        **B.    Plaintiff is Entitled to a Temporary Restraining Order, an Order of
             Seizure, and a Preliminary Injunction**
3

4        This action is aimed at bootleggers — groups of individuals who manufacture counterfeit

5    merchandise and sell it throughout the Artist's tour.  The only available remedy which can protect

6    Plaintiff and the Artist is injunctive relief, including an order of seizure.

7                    **1.        An Injunction and Order of Seizure Are Appropriate**

8        In addition to the injunctive relief sought, it is necessary to seize all the subject goods

9    manufactured, sold and/or distributed for sale by Defendants in order to render complete relief herein,

10   prevent irreparable injury flowing to Plaintiff as a result of Defendants' course of conduct in

11   counterfeiting these items, and prevent these items from being destroyed or transferred to parties

12   outside this litigation.

13       The courts have repeatedly issued temporary restraining orders and orders of seizure, in

14   advance of concerts, to stop the sale of bootleg merchandise.  *See, e.g.*, Exhibits A through L to the

15   Slotnick Declaration and the cases listed in Appendix A to this Memorandum.  This procedure is

16   specifically authorized by statute.  Section 44 of the Lanham Act (15 U.S.C. § 1116) specifically

17   provides for injunctions "upon such terms as the court may deem reasonable" to prevent the

18   infringement of registered trademarks <u>and</u> violations of Section 43(a).  15 U.S.C. § 1116(a).  *See also*

19   15 U.S.C. § 1118 (a court has the authority to order delivery, seizure and destruction of merchandise

20   which violates registered trademark or Section 43(a) of the Lanham Act); 15 U.S.C. § 1126 (remedies

21   for violation of registered trademarks also available for acts of unfair competition).  *See also* J. T.

22   McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 30:36 ("[A] federal court has power

23   to issue an *ex parte* seizure order in an appropriate case involving infringement of an unregistered

24   mark under Lanham Act § 43(a).")

25       In virtually all of the cases cited herein where a wholly *ex parte* restraining order was awarded

26   in the context of John Doe lawsuits, the courts have granted the ancillary remedy of seizure.  In *Moon*

27   *Records v. Various John Does*, 217 U.S.P.Q. 46, 47-48 (N.D. Ill. 1981), the court recognized that

28   immediate and irreparable injury would ensue before defendants could be given notice and an

1    opportunity to be heard and, therefore, authorized the United States Marshal "to seize and impound

2    any and all infringing merchandise . . . in vicinity of the International Amphitheater, Chicago,

3    Illinois . . . ."

4        Moreover, under the traditional standard of Rule 65 of the Federal Rules of Civil Procedure,

5    seizure orders should be granted.  As described above, Plaintiff has demonstrated a strong likelihood

6    of success on the merits.  Moreover, in case of trademark infringement and unfair competition such as

7    this, the fact that there is a likelihood of confusion constitutes irreparable injury as a matter of law

8    sufficient to satisfy the requirements of Rule 65(b)(1).  *In re Vuitton et Fils S.A.*, 606 F.2d 1, 4-5 (2d

9    Cir. 1979).  Absent injunctive relief, in advance of the bootleg sales, the bootleg sales <u>will</u> occur and

10   the Defendants will disappear, making it impossible to remedy this ongoing violation of Plaintiff's

11   rights.[1]

12       In *Vuitton*, the Second Circuit acknowledged that complete injunctive relief must be accorded

13   to parties who face the anomaly whereby the products subject to the injunction may be transferred or

14   destroyed prior to the enforcement of the injunction by a court of competent jurisdiction.  The

15   supporting declarations demonstrate that granting of the temporary restraining order and order of

16   seizure would appear not only appropriate, but in fact imperative in order for Plaintiff to obtain any

17   real remedy.  While notice has traditionally been considered a part of procedural due process, the

18   Supreme Court has recognized that "[t]here may be cases in which a creditor could make a showing of

19   immediate danger that a debtor will destroy or conceal disputed goods." *Fuentes v. Shevin*, 407 U.S.

20   67, 93 (1972).

21           **2.    A Temporary Restraining Order, Without Notice, is Available to
                     Enjoin Activities of Persons Whose Identities Are Unknown**
22

23       Plaintiff is attempting to stop the bootleg activities of Defendants whose identities are

24   presently unknown.  Indeed, the identities of the individual bootleggers will not be known until they

25   _____

26   [1]    There is no harm to the Defendants from the issuance of the injunction, since the proposed
27   order only authorizes the seizure of merchandise that violates the trademark laws.

28

1   are stopped and the goods seized, and even then the bootleggers often refuse to give their real identities.

2        Rule 65 of the Federal Rules of Civil Procedure authorizes this Court to grant a temporary

3   restraining order coupled with an order of seizure against the unidentified Defendants.  Subsequently,

4   after the Defendants are served and their infringing goods seized, the Defendants will be identified to

5   the court by proof of service (assuming they provide their true identities).  The Court will then have

6   grounds to preliminarily enjoin the Defendants, and those acting in concert with Defendants, for the

7   remainder of the Artist's Tour.  Federal courts throughout the country have enjoined John Doe

8   bootleggers in this fashion.  *See* Exhibits A through L to the Slotnick Declaration and the cases listed

9   in Appendix A to this Memorandum.

10       In each of these cases, the action was commenced against John and Jane Doe defendants and a

11  temporary restraining order and seizure order was issued.  *See also Moon Records v. Various John*

12  *Does*, 217 U.S.P.Q. 46, 47 (N.D. Ill. 1981):

13      The problem regarding identity of defendants will be met by requiring copies of the
        complaint and this restraining order to be served on all persons from whom the
14      infringing merchandise is seized on February 26, 27, 28 and March 1, 1981.  These
        persons will be asked to reveal their names so that they can be added as parties to
15      the lawsuit and appear in court to contest the seizures at the hearing on March 2, 1981.
        Moreover, [plaintiff] will be required to post a bond to cover any additional damages
16      that may be incurred.

17       The temporary restraining order and order of seizure must not only issue against John and Jane

18  Does, but must be issued without notice.  As a practical matter, it is impossible to give notice to the

19  Defendants whose identity is not yet known.  Moreover, the Lanham Act specifically contemplates

20  that a temporary restraining and seizure order against infringing merchandise may be had on *ex parte*

21  application.  15 U.S.C. § 1116(d) authorizes an *ex parte* restraining order where, in addition to the

22  traditional requirements for injunctive relief: (1) an order other than an *ex parte* seizure order is not

23  adequate; (2) the applicant has not publicized the requested seizure; and (3) the person against whom

24  seizure would be ordered would destroy or otherwise make inaccessible to the court the infringing

25  materials.  15 U.S.C. § 1116(d)(4)(B).

26       Moreover, Rule 65(b) of the Federal Rules of Civil Procedure also permits the Court to grant

27  the requested relief.  As the court stated in *In re Vuitton et Fils, S.A.*, 606 F.2d l, 4-5 (2d Cir. 1979):

28

1

2

> Assuming that all of the other requirements of Rule 65 are met, the rule by its very terms allows for the issuance of an <u>ex parte</u> temporary restraining order when (1) the failure to issue it would result in "immediate and irreparable injury, loss or damage" and (2) the applicant sufficiently demonstrates the reason that notice "should not be required."  In a <u>trademark infringement case such as this, a substantial likelihood of confusion constitutes, in and to itself, irreparable injury sufficient to satisfy the requirements of Rule 65(b)(1)</u> . . .  Here, we believe that such a likelihood of product confusion exists.  The allegedly counterfeit Vuitton merchandise is virtually identical to the genuine items.  Indeed, the very purpose of the individuals marketing the cheaper items is to confuse the buying public into believing that it is buying the true article.

8   While the defendants in the *Vuitton* cases could be identified, the bootleggers here are as yet

9   unidentified.  Here, the <u>only</u> effective remedy is an *ex parte* TRO and seizure order.  Unless an

10   injunction is issued without notice, no injunction is possible because the identities of the Defendants

11   will not be determined until the goods are seized.  Moreover, even if notice was given, the Defendants

12   would simply move their operations to avoid the injunction and the jurisdiction of this Court.

13   **3.    Plaintiff is Entitled to a Nationwide Preliminary Injunction**

14   Once the Defendants have been served in this district, the Court acquires personal jurisdiction

15   over them.  Fed. R. Civ. P. 4; *see also*, 15 U.S.C. § 1116 (Lanham Act injunction may be served

16   against parties against whom the injunction is granted anywhere in the United States).  At the hearing

17   on the preliminary injunction, this Court should enjoin all of Defendants' activities during the entire

18   nationwide Tour.  Absent such a nationwide injunction, complete relief here would be impossible to

19   achieve.  Plaintiff would have to seek separate temporary restraining orders at <u>every</u> location on the

20   Tour.  As a practical matter, such a series of lawsuits is impossible and cost-prohibitive, and would in

21   any event result in a terrible waste of the resources of both the parties and of the federal courts.

22   Each time there is a seizure pursuant to the preliminary injunction the requirement of notice to

23   the person against whom the relief operates will be satisfied.  Once the preliminary injunction is

24   issued it will be served on anyone selling bootleg merchandise at concerts on the tour.  The

25   bootleggers, therefore, will have notice of the injunction at the concert and when their goods are

26

27

28

*EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER OF SEIZURE, AND
ORDER TO SHOW CAUSE RE:   PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
Case No. C-07-02989 RMW

11

1  seized.[2]  Clearly, a nationwide preliminary injunction against Defendants and those acting in concert

2  with them is appropriate and required if Plaintiff is to realize meaningful relief from Defendants'

3  bootlegging activity.

4         The multi-district territorial scope of the requested preliminary injunction is fully within the

5  court's authority.  *See Ciba-Geigy Corp. v. Bolar Pharm. Co.*, 747 F.2d 844, 850 (3rd Cir. 1984)

6  (affirmance of a District Court order enjoining activities that violated Section 43(a) of the Lanham Act

7  would have nationwide effect).  Professors Wright and Miller have stated that "there is no doubt that if

8  the court has personal jurisdiction over the parties, it has the power to order each of them to act in any

9  fashion or in any place."  11 Wright & Miller, *Federal Practice and Procedure*, § 2945 at 402.  The

10  same holds true for non-parties who act in concert with the parties.  The many cases listed in

11  Appendix A to this Memorandum, and to the Slotnick Declaration as Exhibits A through L attest that

12  injunctions of this scope have been granted in federal district courts throughout the United States,

13  including this district.

14         It is well settled that an injunction issued by a federal district court having *in personam*

15  jurisdiction operates continuously and perpetually upon parties to the action throughout the United

16  States.  *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451 (1932); *Kesler v. Eldred,* 206

17  U.S. 285, 288 (1907); *Rubber Tire Co. v. Goodyear Tire & Rubber Co.*, 232 U.S. 413, 417 (1914).  In

18  *Leman*, the Supreme Court considered a contempt proceeding against a party to a permanent

19  injunction granted in the District of Massachusetts.  The Court held that a party to the injunction

20  "could not escape the decree by removing from, or staying without, the District of Massachusetts. . . .

21  Disobedience [of the injunction] constituted contempt of the court which rendered the decree, and was

22  nonetheless contempt because the act was committed outside the district, as the contempt lay in the

23  fact, not in the place, of the disobedience to the requirement."  *Leman*, 284 U.S. at 451-52.

24  _____

25  [2]       To the extent that it is difficult or impractical for any of the bootleggers whose goods are
26  seized to come to this district to contest the applicability of the injunction, Plaintiff has no objection to
   that challenge being heard in a local federal court.  Plaintiff will waive any objections to the location
27  of any action contesting the applicability of the preliminary injunction to a particular bootlegger.

28

Thus, the Court recognized in *Leman* the necessity of dispensing with the requirement that a court maintain physical control over a party to bind that party to a federal district court's injunction. The Court labeled the federal district court's extraterritorial injunctive binding power "one of the decencies of civilization that no one would dispute." *Lehman*, 284 U.S. at 454. The Court added:

> The decree . . . bound the respondent personally. It was a decree which operated continuously and perpetually upon the respondent in relation to the prohibited conduct. The decree was binding upon the respondent, not simply within the District of Massachusetts, but throughout the United States.

*Id.* at 451. *See also Ciba-Geigy Corp. v. Bolar Pharm. Co.*, 747 F.2d 844, 850 (3d Cir. 1984) (affirmance of a district court order enjoining activities that violated Section 43(a) of Lanham Act would have nationwide effect, while affirmance only under the state claim would prevent defendant's activity only as it relates to the state.)

The circuit courts have diligently enforced the extraterritorial power of the federal district courts. The Seventh Circuit has relied on *Leman*, noting that "[t]raditional injunctions. . . are not registrable under [28 U.S.C.] § 1963 [citation omitted] because that would be pointless: they act *in personam* nationwide." *Pacific Reinsurance Mgmt. Corp.*, 929 F.2d 1215, 1218 (7th Cir. 1991) (citation omitted). In *Stiller v. Hordman*, 324 F.2d 626 (2nd Cir. 1963), the Second Circuit held that an Ohio district court could enforce and punish a violation of an injunction that it issued though the actual violation took place in New York. The *Stiller* court arrived at this holding by looking to the binding authority of Supreme Court decisions which the Second Circuit interpreted as holding that the "mandate of an injunction issued by a federal district court runs throughout the United States. . . . Violation of an injunctive order is cognizable in the court which issued the injunction, regardless of where the violation occurred." *Id.* at 628.

The district courts have also enforced their extraterritorial injunctive power. In *Fleming v. Gray Mfg. Co.*, 352 F. Supp. 724, 726 (D. Conn. 1973), the United States District Court for the District of Connecticut used its powers in equity to protect the plaintiffs from the defendant's disposal of assets not yet attached and located in New York. The *Fleming* court held that once it had personal jurisdiction over a party, it could order the party to do or refrain from doing certain acts in other states.

The long history and robust extraterritorial enforcement of district courts' injunctive powers

*EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER OF SEIZURE, AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. C-07-02989 RMW

13

1  support Plaintiff's assertion that this Court may enforce an injunction it issues throughout the United

2  States regardless of where a violation of the injunction may occur.

3      **C.    This Court's Powers to Enforce its Injunctions Throughout the United
            States is Binding on Those Parties in Active Concert or Participation with
4           the Enjoined Parties**

5      The bootlegging operation to be enjoined here is a concerted action of many individuals acting

6  together with the Defendants to be named in the preliminary injunction.  As demonstrated in the

7  accompanying declarations, the nature and quality of the merchandise indicates a concerted operation.

8  The quality of the merchandise indicates a large manufacturing operation that is distributing its goods

9  at various locations on the Tour.  Identical shirts have been found at several locations on previous

10 concert tours, indicating that the bootleggers go from one location on the tour to another to sell their

11 merchandise.

12     Pursuant to Federal Rule of Civil Procedure 65(d), the persons bound by injunctive or

13 restraining orders include the parties to the action and their (1) officers and employees; (2) agents;

14 (3) attorneys; (4) and <u>those persons in active concert or participation with the parties to the action who</u>

15 <u>receive actual notice of the order by personal service or otherwise</u>.  The scope of the necessary legal

16 relationship, for purposes of Rule 65(d), is not to be narrowly restricted.  In *Regal Knitwear Co. v.*

17 *NLRB*, 324 U.S. 9, 14 (1945), the Supreme Court held that Rule 65(d) was intended to embody "the

18 common law doctrine that a decree of injunction not only binds the parties defendant but also those

19 identified with them in interest, in 'privity' with them, represented by them or subject to their control."

20 *See also Rockwell Graphics Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 919 (7th Cir. 1996); *Day Cos.*

21 *v. Patat*, 440 F.2d 1343 (5th Cir. 1971) (injunction covers non-parties who "have knowingly been in

22 complicity" with parties).  *See, generally*, 11 Wright & Miller, *Federal Practice and Procedure*

23 § 2956.  Thus, this Court may enjoin all participants of the bootlegging operation of which any

24 Defendants actually served are members.  Moreover, the Lanham Act specifically authorizes that an

25 injunction granted under Section 43(a) may be served against parties wherever they are found in the

26 United States.  <u>See</u> 15 U.S.C. § 1116.

27     The circuit courts and district courts have liberally applied Rule 65(d) to find various persons,

28 not parties to an action in which an injunction was issued, bound by the terms of the injunction.  In

*Reich v. United States*, 239 F.2d 134 (1st Cir. 1956), a physician not a party to an original injunction prohibiting the use of an "orgone energy accumulators," was found in contempt of an injunction for acting in concert with an enjoined party. The physician had been put on notice by mail of the injunction. The First Circuit noted that even if a person is not served with a copy of the injunction he is still bound by its terms provided he has actual knowledge of the injunction. Likewise, in *Dozne v. Saettele*, 112 F.2d 155 (8th Cir. 1940), the court held that proper service of process was not required to bind a non-party to an injunction provided the non-party had actual knowledge of the injunction.

In the instant case, those acting in concert or participation with the Defendants served in this district <u>will</u> be personally served with the TRO/preliminary injunction at the concerts around the country. In this way, they will receive actual notice of the injunction as required by Fed. R. Civ. P. 65(d). These additional parties will be fully identifiable by virtue of the wares they sell. It is counsel's experience, and the experience of Plaintiff's security personnel, that merchandise having the same make and design finds its way to concert venues throughout the country; the bootlegger who hawks homemade wares at a single venue is the exception. Plaintiff has trained security personnel working on its behalf to identify the major bootleggers. Often, the bootleggers and security are mutually identifiable from working past concert tours. Testimony has been offered from Plaintiff's security consultant, who is responsible for monitoring illegal bootleg sales during the Tour, that the same bootleggers show up at concert after concert and year after year, and that the same make of unauthorized merchandise appears at venue after venue. There is no doubt that the same scenario will be presented during the Artist's current Tour; Plaintiff needs the relief requested herein to gain a foothold against this tide of illegal activity.

## V.    BOND

Rule 65(c) provides that "no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant." Plaintiff submits that only a modest bond is appropriate here given that the only enjoined activity is unlawful bootlegging of concert merchandise. Accordingly, Plaintiff submits that a bond of $10,000 is more than adequate.

VI.    **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's application for a temporary restraining order, order of seizure, and preliminary injunction.


DATED:  June 8, 2007                    Respectfully submitted,

                                        TOWNSEND AND TOWNSEND AND CREW LLP


                                        By:___/s/_____
                                             Marc M. Gorelnik

                                        Attorneys for Plaintiff
                                        Steerpike Productions, Inc.

61064498 v1

**APPENDIX "A"**

UNITED STATES DISTRICT COURT — EX PARTE SEIZURE ORDERS

TRADEMARK CASES – Musical Group or Performer Names,
Concert Vicinity – National Multi-District Seizure Orders

*RST (2005), Inc. (Rolling Stones) v. John Does 1-100, et al.*, Case No. 05-11680WGY (D. Mass. 2005).

*Megadeth, Inc.  v. John Does 1-100, et, al.*, Case No. Civ. 04-08822 (S.D.N.Y. 2004).

*Anthill Trading Ltd. (Sting) v. John Does 1-100, et al.*, Case No. 04-2919(FLW) (D. N.J. 2004).

*Grateful Dead Productions v. John Does 1-100, et al.*, Case No. 04-C-699 (E.D. Wisc. 2004).

*Paisley Park Inc. (Prince) v. Various John Does, et al.*, Case No. 2004-CV-2067 (C.D. Ill.  2004).

*Yessup Touring, II, LLC v. John Does 1-100, et al.*, Case No. 04-2837 (DMC) (D. N.J. 2004).

*Linkin Park LLC d/b/a Linkin Park Merchandising v. John Does 1-100, et al.*, Case No. 04 Civ.0112 (E.D.N.Y. 2004).

*ABB Merchandising Co., Inc. v. John Does 1-100, et al.* Case No. 04 CV 2026 (RCC) (S.D.N.Y. 2004).

*Grateful Dead Productions v. John Does 1-100, et al.*, Case No. 4:03-CV-41 (E.D. Tenn. 2003).

*ABB Merchandising Co., Inc. (Allman Brothers Band) v. John Does 1-100, et al.*, Case No. 03 Civ. 1663 (DC) (S.D.N.Y. 2003).

*Linkin Park LLC d/b/a Linkin Park Merchandising v. John Does 1-100, et al.*, Case No. 03 Civ.1664 (S.D.N.Y. 2003).

*Pearl Jam, L.L.C. v. John Does 1-100, et al.*, Case No. CV-03-203J (E.D.N.Y. 2003).

*Linkin Park LLC d/b/a Linkin Park Merchandising v. John Does 1-100, et al.*, Case No. 02 C0762 (N.D. Ill. 2002).

*RST (2005), Inc. (Rolling Stones) v. John Does 1-100, et al.*, Case No. 02-11706 EFH (D. Mass. 2002).

*ABB Merchandising Co., Inc. v. John Does 1-100, et al.*, Case No. 02 CV 1957 (S.D.N.Y. 2002).

*ABB Merchandising Co., Inc. v. John Does 1-100, et al.*, Case No. 01 CV 2108 (JSM)(S.D.N.Y. 2001).

*Viking Wizard Eyes, Inc. p/k/a Blink-182 v. John Does 1-100, et al.*, Case No. 01 CV 05053 (N.D. Ill. 2002).

*Poo Poo Butt, Inc., p/k/a Blink-182 v. John Does 1-100, et al.*, Case No. 00-04707 (C.D. Cal. 2000).

*ABB Merchandising Co., Inc. v. John Does 1-100, et al.*, Case No. 00 CV 1637 (BSJ) (S.D.N.Y. 2000).

*Pearl Jam, L.L.C. v. John Does 1-100, et al.*, Case No. 98-C-0587 (E.D. Wisc. 1998).

*EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER OF SEIZURE, AND
ORDER TO SHOW CAUSE RE:   PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
Case No. C-07-02989 RMW

1

1

*TNA Tour II (USA) Inc. (Rolling Stones) v. John Does 1-100, et al.*, Case No. 97-C-6517 (CRN) (N.D. Ill. 1997).

2

*H.O.R.D.E. Corporation v. John Does 1-100, et al.*, Case No. C-97-20587 (JW) (N.D. Cal. 1997).

3

*360 Degree Shoutout, Inc. v. John Does 1-100, et al.*, Case No. 97-CV-2504 (JS) (E.D.N.Y. 1997).

4

*TNA [USA] Inc. v. John Does 1-100, et al.*, Case No. C 00-20110 (N.D. Cal. 1999) (Armstrong, J.) (Crosby, Stills, Nash & Young)

5

*Tool Touring, Inc. v. John Does 1-100, et al.*, Case No. C 01-03021 (N.D. Cal. 2001) (Walker, J.) (Tool)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28