TOWNSEND AND TOWNSEND AND CREW LLP
MARC M. GORELNIK (State Bar No. 166833)
JUDITH M. SCHVIMMER (State Bar No. 230285)
Two Embarcadero Center, 8th Floor
San Francisco, California  94111
Telephone:  415.576.0200
Facsimile:  415.576.0300
Email:  mmgorelnik@townsend.com
        jmschvimmer@townsend.com

LOEB & LOEB LLP
BARRY I. SLOTNICK
BRYAN I. REYHANI
345 Park Avenue
New York, NY  10154-0037
Telephone:  212.407.4000

Attorneys for Plaintiff
Steerpike Productions, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEERPIKE PRODUCTIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOES 1-100, JANE DOES 1-100, and XYZ COMPANIES 1-100,<br><br>Defendants. | Case No.    C-07-02989 RMW<br><br>**DECLARATION OF BARRY I. SLOTNICK IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER OF SEIZURE, AND PRELIMINARY INJUNCTION** |

I, Barry I. Slotnick, hereby declare as follows:

1.     I am a member of the law firm of Loeb & Loeb, LLP, attorneys for plaintiff Steerpike Productions, Inc. ("SPI"). I make this declaration in support of SPI's application for an order to show cause, with temporary restraining order and order of seizure, enjoining the sale, and permitting the seizure, of unauthorized "bootleg" merchandise (the "Bootleg Merchandise") bearing the name, images, trademarks, or logos (collectively the "Trademark") of the musical group professionally known as THE POLICE (the "Artist") on the Artist's current North American concert tour (the "Tour").

2.     The Artist's name has been used for years to identify it as a rock music group in all phases of the entertainment industry and to distinguish the Artist from all other such groups. The Artist is a world-renowned musical group with a loyal listening public consisting of millions of fans. First appearing together in 1977, the Artist has sold millions of recordings, including such hits as "Every Breath You Take," "Roxanne" and "Message In A Bottle."

3.     The Artist commenced its Tour on May 28, 2007, and will continue with shows at major venues throughout the United States and Canada through August 2007, including a show at the McAfee Coliseum in Oakland, California on June 13, 2007 (the "Oakland Show"). This Tour is the first North American tour by the Artist since its 1984 "Synchronicity" concert tour.

4.     The Tour will conclude no earlier than August 5, 2007. Given the Artist's popularity, SPI believes that defendant bootleggers, and those acting in concert with them, will sell, and offer for sale, Bootleg Merchandise at the concerts during the Tour, including the Oakland Show. The following supports SPI's application for an order to show cause and, after an appropriate hearing, a preliminary injunction.

**I.**

**SPI POSSESSES THE EXCLUSIVE RIGHT TO SELL AND DISTRIBUTE AUTHORIZED MERCHANDISE AT ALL OF THE CONCERTS ON THE ARTIST'S PRESENT TOUR**

5.     SPI is a corporation which, by licensing agreement, possesses the exclusive right to use, or authorize the use of, the Artist's Trademark on and in connection with printed programs, illustrated tour books, T-shirts, jerseys, sweatshirts, hats, visors, buttons, posters and other

1    merchandise (collectively the "Tour Merchandise") sold and offered for sale in the vicinity of the

2    Artist's concert performances during the Tour.

3        6.        Generally, authorized Tour Merchandise is sold exclusively through concessionaires at

4    the various arenas or stadiums throughout the country at which the concerts are held.  At each such

5    venue, Tour Merchandise is delivered to the concessionaires immediately prior to the concert and the

6    concessionaires offer the merchandise for sale.  All unsold products are returned to SPI.

7        7.        In essentially all cases, the Tour Merchandise is sold only at and within the arenas

8    immediately before, during, and after the concerts.  Therefore, any merchandise bearing the

9    Trademarks of the Artist which is sold outside any such arena (or otherwise by any person other than

10   SPI's authorized vendors) is unmistakably unauthorized Bootleg Merchandise.

11

12                                    **II.**

13   **DEFENDANTS WILL INFRINGE UPON SPI'S EXCLUSIVE
     RIGHTS BY SELLING BOOTLEG MERCHANDISE**

14       8.        Unless relief is granted to SPI, the Artist's upcoming Tour will be heavily bootlegged.

15   The Artist is one of the most popular music groups of all time with millions of fans worldwide, many

16   of whom will see — or attempt to see — the Artist's concerts during the course of the Tour.  Under

17   these circumstances, bootlegging presents a serious problem.

18       9.        Typically, "core" groups of bootleggers follow prominent concert tours.  In following a

19   tour from concert to concert, the bootleggers maximize their illegal profits.  Generally, the bootleggers

20   appear outside the venues hours before the concert, offering for sale their unauthorized and inferior

21   merchandise — particularly T-shirts — which bear the names, logos, or likenesses of the group or

22   individual artist.

23       10.       Such illegal merchandise seriously impairs SPI's sales of authentic merchandise within

24   the arenas, particularly because most of the Bootleg Merchandise is sold prior to the concert, before

25   the fans have a chance to reach SPI's authorized vending areas.  Thus, each of the counterfeit sales

26   represents a lost sale to SPI and lost income to the Artist and venues.

27       11.       The persistence and severity of bootlegging activity experienced by entertainers such as

28   the Artist attest to the economic importance of tour merchandising rights in connection with musical

1  performing artists and groups. Absent the relief requested, however, the loss of merchandising

2  income at even a single venue could range in the thousands or tens of thousands of dollars. This

3  damage is compounded by the injury to the goodwill of the Artist and SPI through the distribution of

4  inferior merchandise, which inevitably is associated with the Artist and SPI. Clearly, such damage is

5  irreparable.

6  **III.**

7  **THE RELIEF REQUESTED IS SPECIFICALLY AUTHORIZED UNDER**
8  **FED. R. CIV. P. 65 AND NUMEROUS APPLICABLE PRECEDENTS**

9      12.     Pursuant to Fed. R. Civ. P. 65(b), Section 1116(d)(1)(A) of the Lanham Act, 15 U.S.C.

10  § 1116(d)(1)(A), and the Court's inherent equity powers, the Court has authority to grant SPI's

11  application for a temporary restraining order and order of seizure, prohibiting unauthorized sales of

12  Bootleg Merchandise and permitting the seizure of such merchandise at or near the concert venues. In

13  numerous previous applications of this type made in various federal courts, including this district, the

14  relief requested herein has been granted. Attached hereto as Exhibits A through L are copies of

15  national, multi-district injunctions issued in the following cases:

16      Exhibit A:    *RST (2005), Inc. v. William L. Casey, et al.*
17                    Case No. 05-11680 (D. Mass. 2005) (The Rolling Stones)

18      Exhibit B:    *Paisley Park Inc. v. Various John Does, et al.*
                      Civ. A. No. 2004-CV-2067 (C.D. Ill. 2004) (Prince)

19      Exhibit C:    *Grateful Dead Productions v. John Does 1-100, et al.*
20                    Case No. 04-C-699 (E.D. Wis. 2004)

21      Exhibit D:    *Anthill Trading Ltd v. John Does 1-100, et al.*
                      Case No. 04-2919 (D. N.J. 2004) (Sting)

22      Exhibit E:    *Yessup Touring, II, LLC v. John Does 1-100, et al.*
23                    Case No. 04-2837 (D. N.J. 2004) (Van Halen)

24      Exhibit F:    *Linkin Park LLC d/b/a Linkin Park Merchandising v. John Does 1-100, et al.*
                      Case No. 04-Civ.0112 (E.D.N.Y. 2004)

25      Exhibit G:    *Pearl Jam, L.L.C. v. John Does 1-100, et al.*
26                    Case No. CV-03-203J (E.D.N.Y. 2003)

27      Exhibit H:    *Linkin Park LLC d/b/a Linkin Park Merchandising v. John Does 1-100, et al.*
                      Case No. 02-C-0762 (E.D. Ill. 2002)

28

1   Exhibit I:    *Viking Wizard Eyes, Inc. p/k/a Blink-182 v. Various John Does*
               Case No. 01-C-5053 (N.D. Ill. 2001) (Blink 182)

2

3   Exhibit J:    *ABB Merchandising Co., Inc. v. John Does 1-100, et al.*
               Case No. 00-Civ-1637 (S.D.N.Y. 2000) (Allman Brothers Band)

4   Exhibit K:    *TNA [USA] Inc. v. John Does 1-100, et al.*
               Case No. C 00-20110 (N.D. Cal. 1999) (Armstrong, J.) (Crosby, Stills, Nash &

5               Young)

6   Exhibit L:    *Tool Touring, Inc. v. John Does 1-100, et al.*
               Case No. C 01-03021 (N.D. Cal. 2001) (Walker, J.) (Tool)

7   Annexed to the accompanying Memorandum of Law as Appendix A is a list of numerous additional

8   cases in which Courts have issued national injunctions enjoining the sale of, and permitting the seizure

9   of Bootleg Merchandise in cases very similar to this one.

10       13.    The above cases involved concert tours of prominent musical performing artists in

11   which applications for restraining orders and orders of seizure were granted, thereby providing SPI

12   with a weapon against defendants' bootlegging activities.  In each instance in which service of process

13   was effected upon bootlegging defendants, preliminary injunctions were issued to prohibit continued

14   bootlegging by all identified defendants served with process and all persons acting in concert with

15   them.

16       14.    Like most of the actions listed above and in the schedules attached to SPI's

17   Memorandum of Law, SPI has commenced its action against John and Jane Doe defendants and XYZ

18   Companies because the defendant peddlers cannot positively be identified until the night of the

19   concert (when they are actually served).  As a general rule, individual bootleggers are well aware of

20   the illegal nature of their activities; thus, they conceal their presence and their intentions until just

21   prior to the show.  Even when apprehended they frequently either refuse to identify themselves or

22   provide fictitious names and addresses.

23       15.    In the circumstances, it is extremely difficult — if not impossible — to provide formal

24   notice of the action to defendants.  However, because SPI holds the exclusive rights in the Artist's

25   Trademark in connection with the sale of Tour Merchandise, there is no possibility that issuance of the

26   requested order could interfere with or impose a detriment to the legitimate interests of any other

27   party.

28       16.    Even if the identities of some of the bootleggers could be obtained, they should not be

1    given notice of the seizure because they likely would conceal or destroy the bootleg merchandise and

2    all other evidence of their infringing activities, including any evidence which would disclose the

3    identity of their suppliers and other persons acting in concert with them. The ex parte order of seizure

4    permits a plaintiff to prevent the sale of bootleg merchandise and obtain important evidence, including

5    (i) evidence of the trademark infringement (e.g., the Infringing Merchandise); (ii) evidence to establish

6    defendants' unlawful earnings (e.g., books and records); and (iii) evidence of the persons and entities

7    supplying and acting in concert with defendants.

8        17.    Courts have acknowledged that bootleggers will conceal or destroy such evidence if

9    they are given the opportunity. Thus, as the Third Circuit noted in *Vuitton v. White*, 945 F.2d 569, 571

10   (3d Cir. 1991):

11       Consistent with their calling, professional counterfeiters and dealers in counterfeit
         goods generally are not upstanding citizens. This presents a major obstacle to
12       trademark owners trying to protect their marks. As one commentator has described the
         situation, '[e]xperience . . . has shown that it is extremely likely that a counterfeiter,
13       upon [receiving notice] . . . will conceal his infringing merchandise and either destroy
         or conceal all records relating to this merchandise . . . .'
14

15       18.    As demonstrated above, the limited relief afforded to performers and their licensees by

16   the issuance of a temporary restraining order and order of seizure at a single concert site would not

17   prevent these itinerant peddlers from following the performers' tours and continuing to prey upon and

18   infringe SPI's property rights. Accordingly, a multiplicity of legal proceedings seeking the identical

19   relief against the same defendants would be required. Invariably, the cost inherent in such redundant

20   lawsuits is exorbitant, which plays directly into the hands of the bootleggers, since they know that the

21   expense of bringing separate actions for each concert engagement would be prohibitive.

22       19.    At or before the hearing on SPI's application for a preliminary injunction, SPI expects

23   to provide the Court with declarations of service establishing service of the order to show cause and

24   the summons and complaint. If directed, SPI will amend the caption of its complaint to name all

25   identified defendants who have been served with process. SPI will also ask the court to grant a

26   preliminary injunction directed against such defendants, and all persons acting in concert with them,

27   pursuant to Fed. R. Civ. P. 65.

28       20.    It is clear that without the relief sought herein, the Artist, the legitimate merchandiser,

1  and the venues are helpless to prevent this thriving illegal industry from preying upon unwitting fans

2  who are interested in obtaining concert souvenirs.  With increasing frequency, courts have granted

3  such relief as the only reasonable and effective manner of providing any meaningful relief to the

4  artists and their authorized merchandisers.

5      21.    All merchandise seized pursuant to this Court's order will initially be held by SPI or its

6  authorized representatives.  As soon as practicable, SPI will transmit the merchandise to its counsel or

7  other authorized agent to hold until completion of the Tour, at which time the Court can direct the

8  destruction or other disposition of the merchandise.

9      22.    I declare under penalty of perjury that the foregoing is true and correct.

10  Executed on this 1ˢᵗ day of June, 2007

                                        Barry I. Slotnick

15  61064503 v1

DECLARATION OF BARRY I. SLOTNICK IN SUPPORT OF PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER OF SEIZURE,
AND PRELIMINARY INJUNCTION
Case No. _____

6