1  TOWNSEND AND TOWNSEND AND CREW LLP
   MARC M. GORELNIK (State Bar No. 166833)
2  JUDITH M. SCHVIMMER (State Bar No. 230285)
   Two Embarcadero Center, 8th Floor
3  San Francisco, California 94111
   Telephone: 415.576.0200
4  Facsimile: 415.576.0300
   Email: mmgorelnik@townsend.com
5         jmschvimmer@townsend.com

6  LOEB & LOEB LLP
   BARRY I. SLOTNICK
7  BRYAN I. REYHANI
   345 Park Avenue
8  New York, NY 10154-0037
   Telephone: 212.407.4000
9
   Attorneys for Plaintiff
10 Steerpike Productions, Inc.

11

12                     UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14

15 | STEERPIKE PRODUCTIONS, INC.,        | Case No.  C-07-02989 RMW
16 |         Plaintiff,                   |
17 |    v.                                | **DECLARATION OF PETER A. MERLUZZI IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER OF SEIZURE, AND PRELIMINARY INJUNCTION**
18 | JOHN DOES 1-100, JANE DOES 1-100, and XYZ COMPANIES 1-100, |
19 |         Defendants.                  |

I, Peter A. Merluzzi, hereby declare as follows:

1. I have been retained by plaintiff Steerpike Productions, Inc. as a security consultant in connection with merchandising and "bootleg" security with respect to the current North American concert tour (the "Tour") of the musical performing group known as THE POLICE (the "Artist"). I am authorized by plaintiff to make this declaration in support of plaintiff's application for an order of preliminary injunction and order of seizure, enjoining the sale of, and permitting the seizure of, unauthorized "bootleg" merchandise (the "Bootleg Merchandise") bearing the Artist's name, image, logo, or trademark (collectively, the "Trademarks").

2. I have been working as a security consultant for many major merchandising companies in the music business for the past 26 years. For 25 years, I was a law enforcement officer in the Onondaga County Sheriffs Department in Syracuse, New York, rising to the level of lieutenant. I am currently retired as a law enforcement officer.

3. I have extensive experience with the sale of merchandise on concert tours and with the appurtenant problem of bootlegging. I have been retained on numerous occasions as a security consultant to assist in the enforcement of injunctions and seizure orders against sellers of Bootleg Merchandise. I have also provided testimony in support of applications for injunctive relief and orders of seizure.

4. I was in charge of bootleg security for the recent ROLLING STONES tours, and witnessed massive bootlegging on those tours. I was also in charge of working with law enforcement officers in connection with the enforcement of injunctions and seizure orders for concert tours involving U2, THE WHO, PINK FLOYD, ZZ TOP, AEROSMITH, KISS, METALLICA, GENESIS, PHIL COLLINS, LIVE, NINE INCH NAILS, and many others.

5. Based upon my experience on previous tours, bootleggers will be out in force for the Artist's Tour. During the Tour, the Artist will be playing before packed houses in stadiums and arenas with very large seating capacities. I have discussed the Artist's Tour with parties involved in providing security for the venues at which the Artist will be performing. These parties also anticipate extremely heavy bootlegging during the Artist's Tour.

6. The Artist is one of the most prominent and successful musical performing groups in

the industry today. Its audience spans a large portion of the total concert-going public. The Artist's career is firmly established and it enjoys a large following by its audience. Typically, the Artist's concert venues are "sold out" several weeks before the Artist's scheduled performances. Because of its status among popular music enthusiasts, the Tour is expected to be a very successful live performance tour.

7. I make this declaration based upon personal knowledge and to inform the Court of relevant facts concerning unauthorized sales by defendants, and others acting in concert with defendants, of various Bootleg Merchandise bearing the Artist's Trademarks. These unauthorized sales occurred at the Artist's concert in Seattle, Washington on June 6, 2007, and will continue unless enjoined by this Court.

8. I was present at the Seattle Concerts and witnessed the sale of Bootleg Merchandise in the vicinity of the Concert venue. On the evening of June 6, 2007, I encountered at least four individuals selling Bootleg Merchandise. I recognized at least two of the individuals as vendors of bootleg merchandise at past concerts in Oakland, California by other artists. I obtained Bootleg Merchandise from these vendors at the Seattle concerts. True and correct copies of the front and back of the t-shirts are shown in Exhibit A hereto. Neither the Plaintiff or The Artist have authorized the manufacture and sales of the Bootleg Merchandise.

9. At the concerts, we were unable to pinpoint the source of the Bootleg Merchandise stored near the concert venue. Invariably, these items are stored in quantity in the trunk of a car or the back of a van, and the sellers in the bootlegging operation(s) carry only a few shirts at any given time on their person, in order to minimize their risk of loss when the items are legally seized. Often, however, we are able to draw upon our experience to follow the sellers back to the mobile "source," and can then effect a seizure that is larger in quantity and effectiveness.

10. These bootlegging rings target major rock concert tours, and operate in a concerted fashion, following the tours around the country to maximize their unlawful profits. Because of their business-like organization, the bootleggers are able to maintain a continuous supply of Bootleg Merchandise throughout a tour. Moreover, this is the first concert tour by the Artist in many years. It is likely to draw sold out crowds and, with the crowds significant bootleg merchandise activity.

11. Based upon my experience in rock concert merchandising, and my observations of defendants' bootlegging at the Seattle Concerts, I firmly believe that defendants, and those acting in concert with them, will continue to sell Bootleg Merchandise at future concerts on the Tour.

12. In the circumstances, a national injunction is appropriate — indeed imperative — to lessen the harm cause by defendants' bootlegging activity. A national injunction affords plaintiff an economically viable means to deter or minimize defendants' sale of Bootleg Merchandise. Without a national injunction, the rights and remedies afforded under federal and state trademark laws are essentially rendered meaningless, since it is financially prohibitive for plaintiff to commence legal proceedings in every city on the Tour.

13. For the foregoing reasons, plaintiff respectfully requests that the Court grant a preliminary injunction, and order of seizure, enjoining defendants, and those acting in concert with defendants, from continuing to sell the Bootleg Merchandise during the Tour.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 7th day of June, 2007, in Seattle, Washington.

_____
Peter A. Merluzzi

61064891 v1

DECLARATION OF PETER A. MERLUZZI IN SUPPORT OF PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER, ORDER OF SEIZURE, AND PRELIMINARY
INJUNCTION
Case No.                                                                                     3